```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
                      EASTERN DIVISION

UNITED STATES OF AMERICA,       )
                                )
           Plaintiff,           )
                                )
           v.                   )    No. 12 CR 865-1
                                )
DAVID COUSINS,                  )
                                )
           Defendant.           )
```

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of defendant David Cousins for discovery concerning selective prosecution. The court denies defendant's motion in large part but grants limited discovery, for the reasons explained below, of the Bureau of Alcohol, Tobacco, Firearms and Explosives' manual regarding the identification of targets in its stash-house robbery sting operations.

## DISCUSSION

On December 6, 2012, the grand jury returned an indictment charging David Cousins and his two co-defendants, Michael Cousins and Dunwon Lloyd, with conspiring to commit a robbery affecting interstate commerce, in violation of 18 U.S.C. § 1951(a) (Count One); conspiring to knowingly and intentionally possess five kilograms or more of cocaine with intent to distribute, in violation of 21 U.S.C. § 846 (Count Two); and knowingly possessing a firearm in furtherance of a crime of violence and a drug-

trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Three).[1] Count Four charged David Cousins and Count Five charged Lloyd with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Law enforcement agents arrested the defendants on November 6, 2012 as part of a stash-house robbery sting operation. The stash house did not exist, and the defendants' partner turned out to be an undercover agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").

In the present motion, David Cousins ("Cousins") seeks discovery concerning the targeting of persons and the use of informants in stash-house investigations. Cousins's contention that he might have a "possible defense of selective prosecution and racial profiling,"[2] Mot. at 5, is based on the statistics on the racial makeup of the defendants in this case and sixteen other phony-stash-house cases that, since 2006, the ATF has investigated and the United States Attorney's Office for the Northern District of Illinois has prosecuted. In support of his motion, Cousins provides a list of those cases and information about the race of the defendants: 42 defendants are African American, 8 are Latino, and 7 are white. Cousins emphasizes that in the cases filed since

---

[1] Michael Cousins and Dunwon Lloyd have pleaded guilty to Counts One and Three.

[2] Cousins actually raises two defenses. "Racial profiling" is a "selective enforcement" claim, which is different from a selective prosecution claim because it focuses on law-enforcement tactics. See United States v. Barlow, 310 F.3d 1007, 1010 (7th Cir. 2002).

2

2010, 19 defendants are African American, 7 are Latino, and none are white.  He contends that "[t]hese statistics . . . present a stark discriminatory picture."  (Mot. at 4.)

Cousins argues that the court should authorize discovery related to his purported defenses of selective prosecution and selective enforcement pursuant to United States v. Armstrong, 517 U.S. 456 (1996), or Federal Rule of Criminal Procedure 16.  In his motion, Cousins seeks discovery of eleven categories of information or documents, including a list of all phony-stash-house sting cases (by case name, number, and the race of each defendant) brought by the United States Attorney's Office for this district from 2006 to the present in which the ATF was the federal investigatory agency; all national and Chicago Field Office ATF manuals concerning phony-stash-house investigations, including protocols and directions to agents; and all documents that contain information on how supervisors and managers of the Chicago-area ATF seek to ensure or did ensure that its agents were not targeting minorities.  (Mot. at 5-7.)  In his reply brief, however, Cousins requests discovery of "[a]ll documents the government has produced in discovery in" 12 CR 887 and 12 CR 632 in compliance with Chief Judge Castillo's orders on selective-prosecution and selective-enforcement discovery, as well as "[a]ll documents the government has . . . produce[d] in discovery" in 13 CR 63 in compliance with Judge Darrah's October 30, 2013 order.  (Reply at 3-4.)

**LEGAL STANDARDS**

**A.   United States v. Armstrong**

The Supreme Court considered the showing that a defendant must make to obtain discovery on a selective prosecution claim in Armstrong, 517 U.S. 456.  As the Supreme Court explained, the Attorney General and United States Attorneys, as delegates of the President, retain "broad discretion" to enforce federal criminal laws, and "in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." Id. at 464.  "In the ordinary case, 'so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.'"  Id. (quoting Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978)).

A prosecutor's discretion, however, must yield to constitutional constraints, including the equal-protection component of the Fifth Amendment's Due Process Clause. Id. (citing Bolling v. Sharpe, 347 U.S. 497, 500 (1954)).  Thus, a prosecutor must not base a decision whether to prosecute on "an unjustifiable standard such as race, religion, or other arbitrary classification."  Id. (quoting Oyler v. Boles, 368 U.S. 448, 456 (1962)).  To overcome the presumption that a prosecutor has not violated equal protection, a criminal defendant must present "clear

evidence to the contrary." Id. at 465.  Specifically, "[t]he claimant must demonstrate that the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" Id. (citation omitted).  To establish discriminatory effect in a race case, the defendant must show that "similarly situated individuals of a different race were not prosecuted." Id.

Furthermore, due to the onerous nature of discovery on selective prosecution claims, the Supreme Court held that the "justifications for a rigorous standard for the elements of a selective-prosecution claim . . . require a correspondingly rigorous standard for discovery in aid of such a claim." Id. at 468.  Therefore, to obtain discovery on a selective prosecution claim, a criminal defendant must show "some evidence of both discriminatory effect and discriminatory intent." United States v. Bass, 536 U.S. 862, 863 (2002) (citing Armstrong, 517 U.S. at 465).  Under Armstrong, the defendant's showing must include "evidence that similarly situated defendants of other races could have been prosecuted, but were not . . . ." Armstrong, 517 U.S. at 469.  The Supreme Court decided that this threshold "adequately balances the Government's interest in vigorous prosecution and the defendant's interest in avoiding selective prosecution." Id. at 470.

Although Armstrong dealt only with a selective prosecution claim, a defendant seeking discovery on a selective enforcement

5

claim also must make the showing Armstrong requires. United States v. Barlow, 310 F.3d 1007, 1010 (7th Cir. 2002) ("[T]he same analysis governs both [selective prosecution and selective enforcement] claims: a defendant seeking discovery on a selective enforcement claim must meet the same 'ordinary equal protection standards' that Armstrong outlines for selective prosecution claims."). Thus, to establish discriminatory effect with respect to a selective enforcement claim, "an African American claimant must demonstrate that a law or regulation was enforced against him, but not against similarly situated individuals of other races." Id. (citing Armstrong, 517 U.S. at 465).

**B.   Federal Rule of Criminal Procedure 16**

Federal Rule of Criminal Procedure 16(a)(1)(E) states:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
> (i) the item is material to preparing the defense;
> (ii) the government intends to use the item in its case-in-chief at trial; or
> (iii) the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E). A defendant must make "at least a prima facie showing of materiality" to obtain discovery under Rule 16(a)(1)(E)(i). United States v. Caputo, 373 F. Supp. 2d 789, 793-94 (N.D. Ill. 2005).

In Armstrong, the Supreme Court considered whether a criminal

6

defendant may obtain discovery on a claim of selective prosecution under Rule 16(a)(1)(E), which, at the time, fell under Rule 16(a)(1)(C). See Armstrong, 517 U.S. at 462-63. The Supreme Court held that he or she cannot: "Rule 16(a)(1)(C) authorizes defendants to examine Government documents material to the preparation of their defense against the Government's case in chief, but not to the preparation of selective-prosecution claims." Id. at 463. The Court, therefore, denies Cousins's request for discovery on racial profiling insofar as Cousins bases his request on Rule 16.

**ANALYSIS**

**A.　Cousins Fails to Meet the Armstrong Standard for Discovery on His Selective Prosecution and Enforcement Claims**

As explained above, to obtain discovery on his purported defenses of selective prosecution and selective enforcement, Cousins must show "some evidence of both discriminatory effect and discriminatory intent." Bass, 536 U.S. at 863 (citing Armstrong, 517 U.S. at 465); Barlow, 310 F.3d at 1010 (applying Armstrong to selective enforcement claims). The only evidence Cousins presents of discriminatory effect or discriminatory intent is the racial makeup of defendants from seventeen stash-house robbery sting cases brought in the Northern District of Illinois since 2006. This evidence fails to fulfill either prong of the Armstrong test.

**1.　Discriminatory Effect**

With respect to the discriminatory-effect prong, Cousins's evidence fails to show that "similarly situated defendants of other

races could have been prosecuted [or arrested], but were not . . . ." Armstrong, 517 U.S. at 469. In Armstrong, the criminal defendant attempted to show discriminatory effect through an affidavit of a paralegal in the Office of the Federal Public Defender alleging that all defendants in similar cases that the public defender's office closed in 1991 were African American. See id. at 459. The paralegal attached to the affidavit a "study" listing the 24 defendants, their race, the charges brought against them, and the status of each case. Id. The Supreme Court held that this "study" did not constitute evidence of discriminatory effect because it "failed to identify individuals who were not black and could have been prosecuted for the offenses for which respondents were charged, but were not so prosecuted." Id. at 470.

In Chavez v. Illinois State Police, 251 F.3d 612 (7th Cir. 2001), the Seventh Circuit clarified that Armstrong did not entirely foreclose the use of statistics to show discriminatory effect. Id. at 638 ("While few opinions directly acknowledge that statistics may be used to prove discriminatory effect, the Court has repeatedly relied on statistics to do just that."). The Seventh Circuit reaffirmed, however, that "[t]he statistics proffered must address the crucial question of whether one class is being treated differently from another class that is otherwise similarly situated." Id. "[R]aw statistics regarding overall charges say nothing about charges brought against similarly

8

situated defendants."  Bass, 536 U.S. at 864 (emphasis omitted); see also Barlow, 310 F.3d at 1012 ("Dr. Lamberth's data tells us nothing about the behavior of the white travelers in Union Station; we therefore have no basis for concluding that any of these white travelers [that law enforcement did not stop] were similarly situated to Barlow."); United States v. Hayes, 236 F.3d 891, 895–96 (7th Cir. 2001) ("Hayes has failed to identify a single defendant of another race who met the guidelines of Operation Triggerlock but was not federally prosecuted . . . .").

Cousins's analysis of the seventeen cases he studied shows that approximately 75 percent of the defendants prosecuted in those cases are African American.  The data he offers, however, says nothing about whether the ATF or the United States Attorney chose not to conduct or prosecute stash-house robbery sting cases for similarly-situated individuals of another race.  The Supreme Court and the Seventh Circuit have repeatedly found that this type of evidence fails to fulfill the discriminatory-effect prong of the Armstrong test.  See Armstrong, 517 U.S. at 470; Bass, 536 U.S. at 864; Barlow, 310 F.3d at 1012; Hayes, 236 F.3d at 895–96.

Moreover, the Court rejects Cousins's argument that because ATF agents choose their targets of investigation, "the pool of similarly situated whites [to use for comparative purposes] is the entire white population in the Northern District of Illinois." (Mot. at 9.)  There is no support in the case law for such a broad

interpretation of who constitutes a "similarly situated" individual. Indeed, the Seventh Circuit's analyses in <u>Barlow</u> and <u>Hayes</u>--and common sense--counsel against such a broad interpretation. In <u>Barlow</u>, two undercover DEA agents questioned and searched two African American individuals in Union Station. 310 F.3d at 1009-10. The Seventh Circuit identified the group of similarly-situated individuals as "whites engaging in the same behavior as Barlow--i.e., looking nervously over their shoulders"-- not as all white individuals in Union Station. <u>See</u> <u>id.</u> at 1012. Similarly, in <u>Hayes</u>, which dealt with alleged racial profiling in federal enforcement of firearms offenses, the Seventh Circuit identified "similarly situated" individuals as "persons of another race <u>who fell within the Operation Triggerlock guidelines</u> [who] were not federally prosecuted." 236 F.3d at 895 (emphasis added). Thus, here, Cousins must show that the ATF chose not to conduct stash-house sting operations to ensnare members of another race who fell within the ATF's guidelines regarding whom those operations may target. Cousins has failed to do so.

The court is sympathetic, though, to the argument that "[w]ithout information . . . as to what ATF is using as its selection criteria in these reverse sting operations," Mot. at 9, defendant faces a difficult task of identifying similarly-situated non-minorities who were not targeted. Therefore, the court will allow limited discovery of the ATF's policies and procedures in

10

place at the time of Cousins's arrest regarding the selection criteria for targets of phony stash-house robbery stings. In United States v. Alexander, 11 CR 148, the government submitted ex parte a six-page excerpt of an ATF manual that includes some provisions related to the identification of targets for this type of sting operation. This court reviewed the document in camera, identified certain sections for disclosure, and ordered the government to provide defense counsel with a redacted copy of the document, redacting all but the following sections of that document:

- i. Section 12(a)(1) on pages A-30 to A-31;
- ii. Section 12(b) and subsections (1)-(5) on pages A-31 to A-32; and
- iii. Section 12(f)(1) on page A-34, except for the front half of the hyphenated word in the first and sixth lines of the subsection.

The court orders the same information to be produced to Cousins's counsel. If the ATF manual in place at the time of Cousins's arrest on November 6, 2012 differs in organization but not substance from that in place at the time of Alexander's arrest on February 23, 2011, the government should produce the equivalent portions. If they differ in substance, the government should so notify the court on an ex parte basis by October 10, 2014, and the court will issue an appropriate order.

11

The court denies the remainder of Cousins's discovery requests because he has failed to make a credible showing of discriminatory effect. See, e.g., Armstrong, 517 U.S. at 470.

**2. Discriminatory Intent**

Cousins's motion for discovery on selective prosecution and selective enforcement also fails under the discriminatory-intent prong of the Armstrong test. To establish discriminatory intent, Cousins must show that the "decisionmakers in [his] case acted with discriminatory purpose." Chavez, 251 F.3d at 645. "'Discriminatory purpose' implies more than intent as awareness of consequences. It implies that the decisionmaker selected or reaffirmed a particular course of action at least in part 'because of' its adverse effects upon an identifiable group.'" Id. (citations and ellipses omitted). In Chavez, the Seventh Circuit held that the statistics offered to show that officers intentionally discriminated against Hispanics in stopping and detaining motorists may not serve as the "sole proof" of discrimination. Id. at 647–48. Rather, a claimant must present "sufficient non-statistical evidence to demonstrate discriminatory intent." Id.

Cousins fails to meet this requirement. The only evidence he offers to show discrimination is the analysis of the racial makeup of defendants in the seventeen stash-house robbery cases he listed. (Mot. at 4, 9.) Under Chavez, even if this analysis sufficed as evidence of discriminatory effect--which, as explained above, it

12

does not--it fails to show discriminatory intent.

Cousins contends that he can prove discriminatory intent by showing, in addition to the statistics he provided, (1) that the ATF acts like "an ostrich who buries its head in the sand to avoid seeing the obvious"; and (2) by virtue of the "inexorable zero," "the fact that not a single white individual has been targeted, selected and prosecuted in these fictitious stash house cases since 2010." (Mot. at 10.) The court disagrees. Cousins does not cite a single case in which a court allowed discovery on selective prosecution or selective enforcement claims based on a showing of alleged discriminatory intent under either of these theories.[3]

Even if Cousins could rely on these theories to fulfill the discriminatory-intent prong of the Armstrong test--a dubious premise considering the demanding standard the Supreme Court imposed in Armstrong, the policy considerations underlying that standard, and the discussion in Chavez--Cousins fails to make a "credible showing" of discriminatory intent under his theories. The only evidence he offers of ATF special agents or the U.S. Attorney intentionally shielding themselves from knowledge of discrimination is that the ATF keeps no statistics about the race of defendants targeted in its stash-house robbery stings. (Mot. at

---

[3]/ The court is aware of a decision that was issued after Cousins submitted his briefs, United States v. Paxton, No. 13 CR 103, 2014 WL 1648746, at *5 (N.D. Ill. Apr. 17, 2014), where the court found that defendants had produced "some evidence" tending to show discriminatory intent by relying on the "inexorable zero" theory. The court declines to follow Paxton in light of Chavez's rejection of the use of statistics as sole proof of a constitutional violation in the selective-enforcement context.

13

10.)  The ATF's failure to keep statistics on the race of defendants hardly suggests discriminatory intent.  Accordingly, the Court denies defendant's request for discovery on racial profiling, with the limited exception noted above.

**B.   The Court Rejects Cousins's Request
       for Discovery under Brady v. Maryland**

Cousins asserts that the Court should order the discovery he seeks under Brady v. Maryland, 373 U.S. 83 (1963).  (Mot. at 11.) Under Brady and its progeny, the government has an affirmative duty "to disclose evidence materially favorable to the accused."  Mosley v. City of Chicago, 614 F.3d 391, 397 (7th Cir. 2010) (quoting Youngblood v. West Virginia, 547 U.S. 867, 869 (2006)).  This duty extends to exculpatory evidence as well as impeachment evidence. Id. (citing Youngblood, 547 U.S. at 869).  Brady, however, does not "entitle a criminal defendant to embark upon an unwarranted fishing expedition through government files, nor does it mandate that a trial judge conduct an in camera inspection of the government's files in every case."  United States v. Phillips, 854 F.2d 273, 278 (7th Cir. 1988); United States v. Mitchell, 178 F.3d 904, 908-09 (7th Cir. 1999); see also United States v. Jumah, 599 F.3d 799, 809-11 (7th Cir. 2010).  "Such matters are committed to the sound discretion of the trial judge."  Phillips, 854 F.2d at 278.

Cousins has offered no evidence that the ATF or the prosecutor considered his race in deciding to investigate and prosecute this action.  The court, therefore, declines to order the discovery

14

Cousins requests under Brady, especially where doing so would allow Cousins to "engage[ ] in the type of fishing expedition rejected by the Supreme Court" in Armstrong. See Hayes, 236 F.3d at 896; see also, e.g., United States v. Wolff, No. 11-719(FSH), 2013 WL 646204, at *6-7 (D.N.J. Feb. 20, 2013) (denying discovery under Brady where the defendant's allegations regarding the materials sought "[did] not rise above the level of mere speculation about materials in the government's files" (internal quotation marks and citation omitted)); Caputo, 373 F. Supp. 2d at 794-95 (denying discovery under Brady because "it is unknown whether any of the requested documents contain exculpatory or impeachment evidence that is material to either the issue of guilt or punishment").

## CONCLUSION

For the reasons explained above, the Court denies in large part David Cousins's motion for discovery concerning selective prosecution and selective enforcement defenses [101]. The court, however, will allow limited discovery of portions of the ATF manual in place at the time of Cousins's arrest regarding the selection criteria for targets of phony stash-house robbery cases, as discussed above. If the ATF manual in place at the time of Cousins's arrest differs in substance from that in place on February 23, 2011, the government should so notify the court on an ex parte basis by October 10, 2014, and the court will issue an appropriate order. If not, the government shall provide a copy of

the document described above (redacted per the court's instructions) to Cousins's counsel by October 14, 2014.

DATE:     October 7, 2014

ENTER:    _____
          Amy J. St. Eve, United States District Judge